IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH LAURENSAU, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 11-1054 |
| | ) | |
| | ) | Magistrate Judge Maureen P. Kelly |
| SAMUEL ROMAROWICS, COIII; MR. | ) | |
| BARKLEY, CO 1 (Property SMU); | ) | |
| VINCENT KNIZER, COII; MR. J. | ) | |
| JOHNSON, COI; FRANK LEWIS, | ) | |
| CHAPLAIN, | ) | |
| Defendants. | ) | |

**OPINION**

**KELLY, Magistrate Judge**

Plaintiff Joseph Laurensau ("Plaintiff" or "Laurensau"), is a frequent litigant with three

cases currently pending in this Court arising out of alleged conspiracies to violate his

constitutional rights in each of the institutions where he has been incarcerated for the past four

years. See, Civil Action Nos. 10-65 (SCI – Greene); 12-623 (SCI – Greene) and 11-1054 (SCI –

Fayette). Plaintiff is presently incarcerated at the State Correctional Institution at Graterford, and

commenced this *pro se* civil action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983,

against various officers and employees at the State Corrections Institution at Fayette ("SCI –

Fayette") for the alleged violation of his rights under the First, Fourth, Eighth and Fourteenth

Amendments to the United States Constitution.  Defendants have filed a Motion for Summary

Judgment [ECF No. 25] as to all of Plaintiff's claims.   Defendants and Plaintiff have filed

1

memoranda of law, concise statements of undisputed (and disputed) facts, and exhibits in support and in opposition to the pending motion, which is ripe for review. For the following reasons, the Motion for Summary Judgment is granted.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff commenced this action on August 15, 2011, with the filing of a Motion for Leave to Proceed In Forma Pauperis, which was granted in conjunction with the filing of Plaintiff's Complaint on September 9, 2011.  [ECF Nos. 1, 2, 3].  All parties have consented to proceed under the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c), [ECF Nos. 5, 15], and after the close of pleadings and discovery in this matter, Plaintiff's deposition, and the filing of Plaintiff's Pre-Trial Statement with proposed evidence and witnesses, [ECF No. 23], Defendants have moved for the entry of summary judgment in favor of each named Defendant.

Plaintiff's claims in this action arise out of his incarceration at SCI – Fayette.  Plaintiff alleges that his First Amendment free exercise of religion rights have been violated by the discontinuation of his Kosher Diet status. He next claims that his food was contaminated, his property was stolen and false misconducts were issued against him in retaliation for complaining about the inadequacy of the contents of the Kosher Diet, or to "discourage Plaintiff's faith." [ECF No. 3, p. 4; No. 23, p.1].  Alternatively, Plaintiff alleges that he was retaliated against for complaining about mail delivery issues after erotic photos and art books he ordered from outside vendors were not delivered through the prison mail system.[1]  [ECF No. 26-2, pp. 20-25].

---

[1] His claim regarding the missing erotic photos is also asserted in the Complaint filed at No. 10-65, wherein Plaintiff alleges that "on 7/26/06 …. I was placed in F607 the hard cell with a mattress and security blanket no yards, showers, razors, and law library.  Cramer and Matthews CO II (both) falsified 2 bogus misconduct reports to cover up the assault.  At said era 27 (panty play) photos via mail vanish.  Lightner and Smith did property inventory on 7/2/06 and 7/06/06 steals my artwork, art supplies, lyrics tub and ID.  Most of these items are sold on black market." ECF No. 1, p.7.

Plaintiff contends that in February 2009, in keeping with his religion, he requested the Kosher Diet program, consisting of bagged meatless meals.  On March 8, 2009, Plaintiff filed a grievance complaining of the inadequacy of starch offerings in the Kosher Diet because of missing graham crackers or peanut butter.  [ECF No. p. 26-3, p. 26].   In responding to Plaintiff's grievance, the SCI-Fayette Food Service Manager informed Plaintiff that the Kosher bags are inspected to make sure they are properly made and that the Kosher menu is strictly adhered to. Plaintiff was told that if there were discrepancies in the contents of his bagged meals, he was to immediately notify the issuing officer so that Food Service could determine if an item was indeed missing.  [ECF No. 30-2].  Plaintiff has presented no evidence that he ever contemporaneously notified an officer that items were missing or that he filed any subsequent grievances concerning the nutritional adequacy of a particular meal.   Instead, on April 2, 2009, Plaintiff submitted an Inmate Request Slip, seeking to discontinue the Kosher Diet "due to inadequate starch."  [ECF No. 26-2, p. 4].  Because Plaintiff did not file the appropriate DOC form, his slip was not treated as a formal request to remove him from the Kosher Diet program, and Plaintiff was later permitted to rescind his removal request.  [ECF No. 26-2, p. 6].

In the following months, Plaintiff took at least two regular trays of food, which was interpreted as evidence that his request for a Kosher Diet was not based upon sincerely held religious convictions.  [ECF No. 26-2, pp. 6-12].  Plaintiff received a warning on May 27, 2009, and was told that if he took another regular tray, he would be removed from the Kosher Diet. [ECF No. 26-2, p. 6].  The following day, Plaintiff took a regular tray.  Defendant Knizer issued a notice of non-compliance concerning religious dietary accommodation rules.  Id.; 26-2, p. 8. Consequently, Plaintiff was removed from the Kosher Diet for failing to follow regulations concerning religious accommodations. Plaintiff was informed that he was eligible to reapply for

3

the Kosher Diet on August 24, 2010.  [ECF No. 26-2, p. 12].  There is no evidence that Plaintiff has done so and, presumably, he continues to eat non-religious specific meals.

Plaintiff alleges that "all Defendants in cahoots of entrapment plan against the Plaintiff. There was soliciting of a dinner tray for a shower and the Plaintiff's Kosher Bag for a shower. Plaintiff sold a total of 2 showers.  Plaintiff was told "your bag ain't come do you want a tray, which is a set up." [ECF No. 29, p. 3].   In a "Request to Staff Member" dated September 21, 2009, Plaintiff also claims that he was taken off the Kosher Diet because he kicked his door and complained about abuse while the Central Office was visiting.  [ECF No. 30-3].

Plaintiff presents several unsubstantiated alternative theories for changing his diet; first, that he sold his meals for showers; second, that his meals were denied because of his behavior in kicking his cell door; third, that he was removed from the Kosher Diet in retaliation for complaining that the bagged meal had insufficient starch; and, fourth, that he was being discouraged from practicing his religion.  However, based on the uncontroverted evidence, because Plaintiff had once requested to be removed from the Kosher Diet and then opted for regular trays on successive days two months later, Defendant Chaplain Frank Lewis informed Plaintiff that he was "taken off because [he] did not follow the regulations, [was] warned and still didn't follow the regulations." Id.  Plaintiff claims his removal from the Kosher Diet constitutes an unconstitutional infringement of his First Amendment right to the free exercise of religion.

Plaintiff next alleges that in the Spring of 2009, he ordered 24 copies of "Heavenly Letters Erotic Photos" and three "art books." Plaintiff alleges that Defendants Barkley, Johnson and Knizer tampered with his mail, and his orders were never received. [ECF No. 3, pp. 4-5].

Plaintiff alleges that the apparent theft of his mail violates his rights under the Fourteenth Amendment.

The record establishes that Plaintiff's photos were delivered, and placed with his stored property because of limitations on the number of photos permitted in a Restricted Housing Unit cell.  Plaintiff was informed of the location of the photos and also informed of the procedure to exchange in-cell photographs for those placed in storage.  [ECF No. 26-3, pp. 21 – 25].  The missing art books had been "disallowed" by prison officials and returned to the vendor. [ECF No. 30-9, p. 1]. Apparently, the vendor claims it does not have a record of the return and so has not refunded Plaintiff's money. [ECF No. 30-10].

On August 20, 2009, Plaintiff filed a grievance concerning the theft of his mail and alleged that he had been told by "other inmates" that his photos were distributed to "confidential informers who conspired with officials to hijack my mail order." [ECF No. 26-3, p. 17].  On August 26, 2009, Plaintiff asked Defendant Johnson, the officer monitoring Plaintiff's cell block, about his missing art book and photos.  Plaintiff alleges that an inmate block worker, "Feola," who was "hired" by Defendant Johnson to do Johnson's dirty work, yelled at Plaintiff to "shut the fuck up I'm a put my nuts on your graham crackers tonight." Plaintiff claims that, "later on Johnson served my Kosher Diet my graham crackers was crushed saliva in my cottage cheese and a sticky pad note which states "fuck yo photos." [ECF No. 30, p. 3].  Plaintiff believes that Defendant Barkley and/or Defendant Johnson and/or Defendant Knizer permitted Feola access to his food tray, resulting in the contamination of his dinner.  Plaintiff alleges that two days later, on August 28, 2009, Feola spit chewing tobacco and saliva into Plaintiff's cottage cheese, crushed his graham crackers and took his saltines.  [ECF No. 3, p. 4]. Plaintiff concedes that because he

believed his cottage cheese was contaminated, he dumped it on the floor and shoved it under his cell door into the hallway and then washed it away with "some water." [ECF No. 30, p. 5].

Observing water leaking from under Plaintiff's door, Defendant Barkley investigated and discovered that Plaintiff was using a cup to throw toilet water on the floor.  Defendant Barkley began shutting off Plaintiff's in-cell water supply, using a valve located immediately outside Plaintiff's cell door.  Seeing Defendant Barkley, Plaintiff threw toilet water through the cell door, striking Defendant Barkley on his left arm, leg and head. [ECF No. 26-2, p. 34]. Defendant Barkley obtained precautionary medical treatment and Plaintiff was extracted from his cell, moved to a disciplinary custody cell and charged with misconduct. [ECF No. 26-3, pp. 2-5].  Plaintiff pled no contest to two charges, and not guilty to a charge of assault, which was assessed because of Barkley's need for medical treatment. Plaintiff alleges that the misconduct is "false," and constitutes retaliation for complaining about the missing photos.

Plaintiff's misconduct hearing resulted in a finding of guilty for tampering with property and assault, and Plaintiff was assessed 90 days of disciplinary custody status.  [ECF No. 26-2, 34-35].  Plaintiff alleges he was placed on a Behavior Modified Meal for three days and lost yard, library and property privileges for seven days.  In addition, pursuant to DOC policy, during the extraction, Plaintiff's eyeglasses were removed and his cell property was stored. Plaintiff alleges that the blue sticky note, which he claims is his proof that the cottage cheese was contaminated, was stolen during the cell search.   Plaintiff also alleges that he was given another inmate's eyeglasses, but he did not notice that the prescription was different because prison lighting is dim. [ECF No. 26-2, p. 27-29].  Plaintiff contends that Defendant Ramerowicz intentionally switched the glasses, as part of a scheme to sell inmate property on the "black market." This left Plaintiff without glasses because, Plaintiff alleges, inevitably, the other inmate

demanded that the glasses be returned. Plaintiff alleges that this series of events occurred in retaliation for his initial complaints regarding his missing photos, in violation of the First and Fourteenth Amendments.  He also contends that his missing property and loss of his eyeglasses violates his Fourth and Fourteenth Amendment rights.

In sum, Plaintiff alleges claims arising under the First Amendment of the United States Constitution for the denial of his right to exercise religious beliefs through the discontinuation of Plaintiff's Kosher Meal status; a First Amendment claim for retaliation arising out his filing of administrative grievances which resulted in the filing of false misconducts, housing changes and privilege limitations, the contamination of his food and the discontinuation of his Kosher Meal status; an Eighth Amendment conditions of confinement claim for the contamination of his food; a Fourth Amendment claim arising out of the confiscation or loss of his personal property; and a Fourteenth Amendment claim for the filing of false misconducts, and the deprivation of some of his property and incoming mail.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir.1992). Once that burden has been met,

7

the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir.1990) (quoting Anderson, 477 U.S. at 251–52).

If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable ... or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249–50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. See Fed.R.Civ.P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv–A–Portion, Inc., 909 F.2d 1524, 1542 (3d Cir.1990).

## III.   DISCUSSION

### A. First Amendment Exercise of Religion Claim

Plaintiff claims that Defendants violated his First Amendment right to exercise his religion by denying him a diet consistent with his Jewish faith.  Defendants move for the entry of judgment in their favor as a matter of law because Plaintiff's removal from the Kosher Diet resulted from Plaintiff's noncompliance with dietary requirements.  Defendants contend that Plaintiff's noncompliance evidences the absence of a sincerely held religious belief triggering the need to accommodate him through a special diet.   Plaintiff counters that his conduct in taking

non-religious trays was a conspiracy to "set him up;" that he traded the trays for showers in the underground prison economy; that he was removed from the Kosher Diet because he was retaliated against after kicking his cell door and yelling about abuse during a visit by Central Office staff; and, finally, that he took regular meal trays because the Kosher Diet meals were nutritionally inadequate.

It is certainly true that inmates have a constitutional right to receive a nutritious diet consistent with their religious beliefs. DeHart v. Horn,  227 F.3d 47, 50-51 (3d Cir. 2000). However, such rights are not unlimited; an inmate retains only those "First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Id. (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)). Accordingly, in order to establish a First Amendment violation to the free exercise of religion, a plaintiff must show that defendants prevented him from exercising that right without any justification that is reasonably related to a legitimate penological interest. See Banks v. Beard, 548 U.S. 521, 528 (2006) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)); see also Dreibelbis v. Marks, 675 F.2d 579, 580 (3d Cir. 1982) (prison officials may restrict the exercise of an inmate's religious expression "when necessary to facilitate some legitimate goals and policies of penal institutions").

The "mere assertion of a religious belief does not automatically trigger First Amendment protections. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protections." DeHart v Horn, at 51. "Prison officials are, of course, entitled both to make a judgment about the sincerity and religious nature of an inmate's belief when he or she asks for different treatment and to act in accordance with that judgment. If the request is not a constituent part of a larger pattern of religious observance on the part of the

inmate, for example, the asserted religious basis for the request may be rejected as pretext." <u>Id.</u>, at 52.  Thus, when a prisoner claims that his or her right to exercise religion has been curtailed, a court must determine as a threshold matter whether the prisoner has alleged a belief that is both sincerely held and religious in nature. <u>Id.</u> at 51.[2] In making this determination, the court may consider the prisoner's noncompliance with dietary restrictions as evidence of the lack of a sincerely held belief requiring special accommodation.  <u>Contant v. Lowe</u>, 450 F. App'x 187, 190 (3d Cir. 2011).

On February 17, 2009, Plaintiff executed a Receipt of Religious Diet Accommodation form (ECF No. 26-2, p. 2), setting forth his request for Kosher Bag Diet Meals, and acknowledging that in order to receive the meals, adherence to Program Rules was required.  The rules plainly support the legitimate penological interest of reducing the Commonwealth's expense of preparing individual special diets for the DOC prison population by limiting the meals to recipients who strictly adhere to the tenants of the religious belief necessitating the accommodation.  Program Rules, as set forth on Plaintiff's signed receipt, include not taking or eating "from a regular serving line tray" and further provide that an inmate will be considered non-compliant if he is "observed taking or eating from a tray from the regular mainline." <u>Id</u>  The Program Rules clarify that non-compliance "may result in … permanently forfeiting this diet." <u>Id.</u>

---

[2] If so, the court must then apply the four-factor test set forth in <u>Turner v. Safley</u>, 482 U.S. 78 (1987), to determine whether the curtailment at issue is "reasonably related to penological interests."  The <u>Turner</u> factors  are: (1) is there a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it" (citation omitted), 482 U.S. at 89; (2) does the prisoner have alternate means of "exercising the right that remain open to prison inmates," <u>id.</u> at 90; (3) what "impact" would "accommodation of the asserted constitutional right have on guards and other inmates, and on the allocation of prison resources generally," <u>id.</u>; and (4) what "ready alternatives" to the prison regulation exist. <u>Id.</u>

The record in this action shows that Plaintiff requested a Kosher Diet in February 2009, and in March 2009, he submitted a complaint about missing or inadequate starch in the meals. Plaintiff was provided an explanation that the Kosher Diet is strictly adhered to, and that preparation is supervised to ensure the meals are properly made.  Plaintiff was instructed as to how to correct any discrepancy in a bagged meal to ensure an adequate diet.  In April 2009, Plaintiff requested to be removed from the Kosher Diet, again challenging the sufficiency of the starch portions served with each meal. Plaintiff subsequently rescinded his request and remained on the Kosher Diet. However, on May 28, 2009, the day after receiving a warning of noncompliance with Program Rules for taking a "regular" tray, Plaintiff took a second regular tray.  Plaintiff's conduct was determined to render him ineligible to remain on the Kosher Diet, because he demonstrated a lack of concern with following the tenets of his religion.

If, as Plaintiff contends, he took the trays in May because he found his meals inadequate, Plaintiff's failure to comply with the procedure outlined to resolve his prior complaints concerning portion size indicates that his request for accommodation was not based upon adherence to religious principles.  Plaintiff has presented no evidence that the meals were nutritionally lacking or that remaining on the Kosher Diet would result in nutritional deficiencies. If the alleged inadequacy of the Kosher Diet forced Plaintiff to choose between adhering to his religious beliefs and eating a regular tray to get adequate nutrition, his failure to present any supporting evidence is fatal to his claim, as is his failure to comply with the grievance procedures to obtain an administrative remedy.  Mestre v. Wagner, No. 10-7141, 2012 WL 299626 (E.D. Pa. February 1, 2012), *aff'd* ___ F. App'x ___, 2012 WL 5278686 (3d Cir. October 26, 2012)(complaint failed to state a Free Exercise claim where Plaintiff did not allege that failure to consistently provide vegan meals for religious reasons resulted in inadequate

nutrition); *cf,* <u>Nelson v. Miller</u>, 570 F.3d 868(7th Cir. 2009) (undisputed testimony and evidence that foregoing meat during all of Lent resulted in insufficient nutrition to a degree that plaintiff lost "so much weight that he had to be hospitalized" was sufficient to state a Free Exercise claim).

Further, if, under Plaintiff's alternative theories, he traded his meals for showers, or chose to eat non-Kosher food rather than wait for the delivery of a Kosher tray, then Defendants made permissible determinations regarding the sincerity and religious nature of Plaintiff's belief for which he requested special treatment. <u>Contant v. Lowe</u>, 450 F. App'x 187, 190 (3d Cir. 2011) (inmate's noncompliance with religious diet was properly considered and removal from program did not violate First Amendment); <u>Tapp v. Proto</u>, 718 F. Supp.2d 598, 614 (E.D. Pa. 2010), *aff'd*, 404 F. App'x 563 (3d Cir. 2010).

The Court notes that the evidence supplied by Plaintiff in support of his First Amendment claim indicates that Plaintiff's request for a Kosher Diet was not religious based, but appears to be rooted in his theory that regular meals prepared at SCI – Fayette were inadequate or improperly prepared and, that by requesting a meatless Kosher Diet, he would receive a better meal plan ("SCI Fayette Dietary is notorious in 2006 there was a massive hunger strike for inadequate meals and uncooked meat the whole SCI-Fayette prison").  [ECF No. 29, p. 2.] Under the circumstances presented, and in the absence of any evidence supporting Plaintiff's claim regarding the purported nutritional inadequacy of the Kosher Diet "forcing" him to take regular meals, or supporting any of his alternative theories, Defendants' decision to remove Plaintiff from the religiously modified diet does not constitute a violation of Plaintiff's First

Amendment rights.[3] Therefore, Defendants' Motion for Summary Judgment as to Plaintiff's First Amendment Exercise of Religion claim is granted.

## B. First Amendment Retaliation Claims

Plaintiff next alleges that Defendants participated in a conspiracy to retaliate against him for filing grievances regarding his missing mail and/or the inadequacy of his Kosher Diet. It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the United States Constitution, which is actionable under Section 1983. Rauser v. Horn, 341 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, the mere allegation of retaliation is insufficient to establish such a claim. In

---

[3] Defendants' motion is based upon Plaintiff's failure to adhere to Kosher dietary rules, which it construes as conclusive evidence that Plaintiff's request for accommodation was not predicated on a sincerely held religious belief. Defendants did not, therefore, seek summary judgment applying the Turner factors to determine the reasonableness of their conduct under the First Amendment as a matter of law. However, application of the factors as outlined in the well-reasoned opinion of the United States District Court for the Middle District of Pennsylvania in Contant v. Lowe, No. 08-1403, ECF No. 76 (E.D. Pa. March 30, 2011), supports a finding that there is no genuine issue of fact concerning the propriety of Plaintiff's removal from the dietary program. First, the rule requiring adherence to program rules serves legitimate governmental budgetary interests and, as the evidence establishes, Plaintiff was permitted to reapply for accommodation. Plaintiff has not presented any evidence that he has reapplied for the Kosher Diet, but the option is available to him. As to the second factor, Plaintiff has not presented any evidence that he was deprived of any alternative means of practicing his religion, and so this factor also weighs in favor of Defendants. The third factor, which examines the impact of an accommodation on other inmates given available resources, also supports Plaintiff's removal from the dietary program inasmuch as preserving limited resources for those inmates who adhere to dietary restrictions of their religion works to reduce the system-wide expense of preparing a special diet to all those who request it. The fourth factor considers if "there are alternatives that can fully accommodate the prisoner's rights at *de minimus* cost to valid penological interests," and, if there are, a court may consider that as evidence that the regulation at issue does not satisfy the reasonable relationship standard. Id. (quoting Turner, at 91). As in Contant, Plaintiff does not identify an alternative method over monitoring the voluntary food selections of inmates for compliance with religious diets as a means to measure sincerity of belief to justify the expense of individual meal preparation. Accordingly, under the Turner factors, removing Plaintiff from the Kosher Diet after learning of his voluntary non-compliance does not violate his First Amendment rights.

order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[4] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Rauser, 241 F.3d at 333 (*adopting* Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The crucial third element, causation, requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503–04 (3d Cir. 1997)). Once a plaintiff has made his prima facie case, the burden then shifts to the defendant to prove by a preponderance of the evidence that he or she "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Rauser, 241 F.3d at 334 (*incorporating* Turner v. Safley, 482 U.S. 78, 89 (1987)); Verbanik v. Harlow, CIV.A. 09-448, 2012 WL 4378198 (W.D. Pa. Sept. 25, 2012).

With particular relevance to Plaintiff's claims for retaliation, a necessary predicate to liability is evidence of personal involvement in the alleged wrongs.  Personal involvement may be shown through contemporaneous personal direction, actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207–08 (3d Cir. 1988); *see also*, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir.1976). Mincy v. Klem, No. 07-CA-0790, 2012 WL 727591 (M.D. Pa. Mar. 6, 2012).  Moreover, unsupported allegations are insufficient to establish

---

[4] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Verbanik v. Harlow, No. 09-448, 2012 WL 4378198 (W.D. Pa. Sept. 25, 2012) (quoting, Bailey v. Lawler, No. 07–2058, 2010 WL 5018825 (M.D. Pa. Aug. 11, 2010)).

personal involvement. A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas, 331 F. Supp.2d at 315; Fed. R. Civ. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–57(1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–89 (1986); see also Fed. R. Civ. P. 56(c), (e).

Plaintiff claims that Defendants Johnson, Barkley, Knizer, Ramerowicz and Lewis retaliated against him for inquiring about his missing mail or for complaining about the contents of his Kosher Diet.  [ECF Nos. 23, p.1-3; 29, pp. 5-7].  He alleges that because of his mail-related complaints, Johnson hired inmate Feola to contaminate his food and Defendant Barkley issued a false misconduct.  Plaintiff further alleges that Knizer retaliated against him by filing a dietary non-compliance report after Plaintiff was observed taking a regular diet tray.  He alleges that Defendant Lewis retaliated against him by approving the removal of his dietary accommodation and that Defendant Ramerowicz retaliated against him by giving him the wrong eyeglasses.  However, Plaintiff has failed to meet his burden of producing evidence to infer retaliatory motive, contemporaneous personal direction or actual knowledge sufficient to create a genuine issue for trial. Mincy v. Klem, 1:07-CV-0790, 2012 WL 727591 (M.D. Pa. Mar. 6, 2012).

First, even assuming that Plaintiff's complaints were protected speech, he has presented no evidence that the contamination of his food occurred at the hands or direction of any defendant prison official as required to sustain a retaliation claim.  See Rauser, 241 F.3d at 222. While Plaintiff attempts to tie the food tampering, dietary changes and his missing eyeglasses to

complaints regarding his mail or his Kosher Diet, there is no record evidence supporting Plaintiff's speculative theories. [ECF No. 26-3, p. 7].

Plaintiff points to the "blue sticky note" to link the incidents of food contamination to his complaints regarding missing mail; however, there is no evidence connecting the note, if it existed, to any Defendant or to a retaliatory motive.   The uncontroverted evidence is that the "missing" photos were placed in Plaintiff's stored property because of cell storage rules and Plaintiff was provided a process to exchange his in-cell photos with those in his stored property. There is no evidence that any named Defendant impeded his access to his photos or had a retaliatory motive to interfere with Plaintiff's food because of his imagined mail issues.

In some instances, circumstantial evidence such as a temporal proximity between a protected act and an adverse action may suffice to indicate retaliatory conduct or motive. See, e.g., Westefer v. Snyder, 422 F.3d 570, 584 (7th Cir. 2005); Thaddeus–X, 175 F.3d at 399. However, timing alone will not create a material issue of fact, as the mere occurrence of an adverse action after a grievance is filed is relevant, but not dispositive. Booth v. King, 228 F. App'x 167, 172 (3d Cir. 2007) (while timing of the incidents appears suspicious, this alone does not create a showing of retaliation); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997), *abrogated on other grounds by* Burlington Northern and Santa Fe Ry. Co., 548 U.S. 53, 60-64 (2006)  (if "timing alone" is the evidence adduced to establish the element of causation in a retaliation claim, the facts must be "unusually suggestive" of retaliatory motive).

Here, the timing of Plaintiff's grievances and complaints does not aid his claim as Plaintiff has failed to offer any evidence that Feola's alleged contamination of Plaintiff's food was connected to a grievance filed against any Defendant, so as to infer that any of the Defendants had a retaliatory motive to orchestrate Feola's alleged misconduct.

16

Even if Plaintiff's speculation, coupled with some temporal proximity gave rise to an inference of retaliatory motive, "[o]nce a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In determining whether the proffered justification is sufficient, "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security" Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The uncontroverted evidence establishes that Plaintiff's removal from the Kosher Diet was related to the legitimate goal of preserving resources for those inmates who adhere to religious restrictions. Plaintiff's eyeglasses were removed to protect his safety during a cell extraction and his photographs were stored with his excess property pursuant to regulations governing the quantity of in-cell possessions.

With regard to the misconduct issued for throwing toilet water, the filing of a prison disciplinary report is not actionable as "retaliation" unless the report is, in fact, false. In other words, the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge even if plaintiff had not filed a grievance. See Harris–Debardelaben v. Johnson, 121 F.3d 708 (6th Cir. July 31, 1997); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998), *cert. denied*, 525 U.S. 907 (1998); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (a finding of guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim."), *cert. denied*, 515 U.S. 1145 (1995). See also Alexander v. Fritch. 396 F. App'x 867, 874 (3d Cir. 2010) (holding that

"because there was evidence to support the hearing examiner's finding of guilt, there was a legitimate penological reason for the charge and punishment"); Carter v. McGrady, 292 F.3d 152 (3d Cir. 2002) (noting that even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering); Allah v. Al–Hafeez, 208 F. Supp.2d 520 (E.D. Pa. 2002).

In this case, Defendants have provided evidence that regardless of Plaintiff's grievances regarding his food and mail, he would have been issued the challenged misconduct for throwing toilet water on Defendant Barkley. After receiving evidence, the Hearing Examiner concluded that Plaintiff had in fact tampered with property and assaulted Defendant Barkley when he threw toilet water from his cell, striking Barkley's arm, leg and head.  Accordingly, Defendants have met their burden of showing that Plaintiff would have been issued the misconduct for reasons reasonably related to legitimate penological interests. See Grunthal v. Tempus, No. 09–CV–1338, 2010 WL 4639049, at *7 (W.D. Pa. Nov. 8, 2010) ("Although Plaintiff disagrees with the factual findings of the hearing examiner, they were upheld after pursuing all levels of review. Thus, Defendants have established that the same action would have been taken in the absence of any protected activity for reasons related to the legitimate penological goal of maintaining order in the institution.").

Plaintiff has failed to present evidence beyond his own speculation that his constitutionally protected conduct was a substantial motivating factor in any alleged act of retaliation.  Accordingly, he has failed to present a genuine issue of material fact requiring jury resolution.  In the absence of any affirmative evidence supporting Plaintiff's claims of retaliation, Defendants' Motion for Summary Judgment is granted. See, Brooks v. DiGuglielmo,

Civ. No. 05-4588, 2008 WL 5187529, at *13 (E.D. Pa. Dec. 9, 2008) ("A plaintiff must come forward with more than general attacks upon the defendants' motivations and must produce affirmative evidence of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive.") (citations omitted).

## C. Fourteenth Amendment Property Claims

Plaintiff alleges that the loss of his art books, photographs and eyeglasses violates his Fourteenth Amendment rights. However, to the extent Plaintiff alleges that his Fourteenth Amendment rights to due process were violated in the context of the confiscation or loss of his property, the Supreme Court of the United States has held that meaningful post-deprivation remedies for such a loss provide sufficient due process for negligent deprivations of property, Parratt v. Taylor, 451 U.S. 527, 530 (1981), and intentional deprivations of property, Hudson v. Palmer, 468 U.S. 517, 533 (1984). Further, the United States Court of Appeals for the Third Circuit has held that the Department of Correction's grievance procedure, DC–ADM 804, provides an adequate post-deprivation remedy which forecloses any due process claim, see McEachin v. Beard, 319 F.Supp.2d 510, 514–15 (E.D. Pa. 2004) (citing Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000)).

Here, Defendants have established that Plaintiff has not pursued DOC grievance procedures through Final Appeal with regard to his missing property. [ECF No. 26-3, pp. 12-14]. Plaintiff's failure to exhaust available administrative remedies also forecloses his claim here. Booth v. Churner, 206 F. 3d 289, 300 (3d Cir. 2000), *aff'd*, 532 U.S. 731(2001). Accordingly, because Plaintiff has not exhausted available administrative remedies regarding his allegedly stolen belongings, he cannot state a Fourteenth Amendment claim as a matter of law.

Accordingly, Defendants are entitled to the entry of summary judgment in their favor as to Plaintiff's Fourteenth Amendment.

### D. Eighth Amendment Claim

Plaintiff's Complaint alleges that the contamination of his food, and his post-misconduct placement in a bare cell with three days of behavior modified meals consisting of "food loaf" and seven days of cell restrictions, including the loss of showers, law library, exercise yards, and property, violated his rights against cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution.  [ECF No. 3, p. 4].   In Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiff narrows his claim, and alleges that the contamination of his food on two occasions, coupled with the crushing of his saltines and graham crackers and his receipt of a note saying "fuck yo photos," violates his Eighth Amendment right against cruel and unusual punishment.  [ECF No. 29, p. 9].

Defendants move for summary judgment, arguing that Plaintiff has not provided any evidence sufficient to support an Eighth Amendment conditions of confinement claim.  As Defendants contend, in order to succeed in an Eighth Amendment conditions of confinement claim, Plaintiff must demonstrate both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while Defendants had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). With respect to the first requirement, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal citation and quotation omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1, 8–9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of

decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions—considered alone constitutionally insufficient—may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise...." See Wilson v. Seiter, 501 U.S. 294, 304 (1991). In applying this test, the Court acknowledges that "[t]he Constitution ... does not mandate comfortable prisons." Wilson, 501 U.S. at 298. "In considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without those benefits." Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir. 1982) (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)).

With respect to the second element, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes v. Chapman, 452 U.S. 337, 347 (1981). This requires a court to determine, subjectively, whether the officials acted with a sufficiently culpable state of mind. Id.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

Farmer, 511 U.S. at 838. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. A trier of fact may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious. Id. at 842.

With this standard in mind, this Court turns to Plaintiff's claims that he suffered violations of his rights under the Eighth Amendment as a result of: (1) the alleged contamination of his food on two occasions, (2) the denial of law library, outdoor exercise and showers for seven days; and (3) his placement on a Behavior Modified Meal for three days.  However, with regard to each of the alleged inhumane conditions of his confinement, Plaintiff presents neither evidence of an excessive risk to his health or safety nor evidence that any of the Defendants were subjectively aware of facts from which the inference could reasonably be drawn that Plaintiff's health or safety were at risk.

The lack of evidence is fatal to Plaintiff's conditions of confinement claims as a matter of law, for no reasonable juror could conclude that Plaintiff's rights were violated.  First, as to Plaintiff's claim regarding his transfer to a bare cell for three days, the Courts are unanimous in holding that the conditions in restrictive housing in Pennsylvania prisons do not, in and of themselves, violate the Eighth Amendment. See Griffin v. Vaughn, 112 F.3d 703 (3d Cir.1997) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment); Fortson v. Kelchner, 2009 WL 693247, At *3 (W.D. Pa. Mar. 13, 2009) (granting Defendants' Motion to Dismiss as to Plaintiff's Eighth Amendment claim regarding confinement in the RHU and SMU); Pressley v. Blaine, 544 F. Supp.2d 446, 453 (W.D. Pa. 2008) (holding that the conditions of disciplinary confinement did not implicate the Eighth Amendment); rev'd on other grounds, 352 F. App'x 701 (3d Cir. 2009); Dantzler v. Beard, Civil No. 05-1727, 2007 WL 5018184, at *11-12 (W.D. Pa. Dec. 6, 2007) (holding that the conditions of confinement in the SMU and LTSU did not amount to cruel and unusual punishment in violation of the Eighth Amendment); Woods v. Abrams, Civil No. 06-757, 2007 WL 2852525, 14 (W.D. Pa. Sept. 27, 2007) (holding that the

conditions of confinement in the LTSU did not satisfy the objective component of an Eighth

Amendment claim); Banks v. Beard, Civil No. 03-659, 2006 WL 2192015, at *11 (W.D. Pa.

Aug. 1, 2006) (same); Rivera v. Pennsylvania Dept. of Corrections, 837 A.2d 525, 530-532 (Pa.

Super. 2003) (same).

Second, as to Plaintiff's claim of food contamination, there is support for the proposition

that prison officials may violate the Eighth Amendment by serving "unsanitary, spoiled or

contaminated food" if the prisoner also alleges that he or she suffered a "distinct and palpable

injury." E.g., Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir.1983). However, an inmate claiming

an Eighth Amendment violation must prove "both an objective element—that the deprivation

was sufficiently serious—and a subjective element—that a prison official acted with a

sufficiently culpable state of mind, i.e., deliberate indifference." Nami v. Fauver, 82 F.3d 63, 67

(3d Cir. 1996). It must be remembered that only "extreme deprivations" that deny "the minimal

civilized measure of life's necessities ... form the basis of an Eighth Amendment violation."

Hudson, 503 U.S. at 9.

Plaintiff presents no objective evidence that his meals were, in fact, contaminated or

otherwise unsafe to eat when served to him.  There is no evidence that Plaintiff

contemporaneously communicated the condition of his meal to any named Defendant or

requested that a DOC officer examine his allegedly contaminated cottage cheese.  Instead,

Plaintiff deposited the cottage cheese under his cell door, and washed it away with toilet water.

Given these facts, Plaintiff has not established a genuine issue of fact that he was served

contaminated food or that he suffered any injury sufficiently serious to invoke the Eighth

Amendment.  See, e.g., Brown v. Sobina,  No. 08-128E, 2009 WL 5173717 (W.D. Pa. Dec. 29,

2009).

In addition, Plaintiff cannot make out the subjective element of an Eighth Amendment claim because he has not provided any evidence that any named Defendant was or should have been aware that the two meals at issue were contaminated, such that Defendants otherwise acted with deliberate indifference to Plaintiff's need for sustenance.  Id.

Plaintiff also makes specific complaints about receiving Behavior Modified Meals for three days, but does not provide any evidence concerning any ill health effects suffered as a result of the meals or that he suffered any additional risk of harm.   As summarized by the Court in Brown v. Sobina, CIV.A. 08-128E, 2009 WL 5173717 (W.D. Pa. Dec. 29, 2009),

> '[a] Food Loaf is a 29–30 ounce loaf (raw weight) made of various food ingredients as specified by the Department's standardized recipe ..., that when blended together and baked, contains all the necessary caloric and nutritional requirements.' Providing an inmate with food loaf for 7 days is not a violation of the Eighth Amendment even if it is a punitive measure. See, e.g., Gates v. Huibregtse, 69 Fed. Appx. 326 (7th Cir.2003) ("As Gates has not claimed that nutri-loaf lacks the nutritional value its name implies, placing him on a temporary nutri-loaf diet because of his misconduct during meal service was not of itself a violation of the Eighth Amendment."); Adams v. Kincheloe, 743 F. Supp. 1385, 1391 (E.D.Wash.1990) (placing inmate on disciplinary five-day diet of "nutra-loaf" did not violate the Eighth Amendment). While inmates have a right to a nutritionally adequate diet, Woods v. Thieret, 903 F.2d 1080, 1082 (7th Cir.1990) ("prison officials have a responsibility to provide inmates with a minima of food, shelter and basic necessities"), they have no constitutional right to be served a particular type of meal. Burgin v. Nix, 899 F.2d 733, 734–35 (8th Cir. 1990). Here, Plaintiff was twice found guilty of committing misconducts related to his food service, and was twice placed on food loaf for a period of 7 days. Plaintiff's constitutional rights were not violated, and Defendants are entitled to summary judgment.

Brown v. Sobina, No. 08-128E, 2009 WL 5173717 (W.D. Pa. Dec. 29, 2009).  In this case, Plaintiff's placement on food loaf for a period of three days in connection with a misconduct for throwing toilet water on a corrections officer did not result in the violation of Plaintiff's constitutional rights.

Plaintiff also claims that he was not permitted showers for seven days. The Eighth Amendment does not require that inmates receive frequent showers and Plaintiff's claim, therefore, fails as a matter of law. DiFilippo v. Vaughn, Civil No. 95-909, 1996 WL 355336 at *5 (E.D. Pa. June 24, 1996) (holding that the Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers). Likewise, the Eighth Amendment does not require hot showers. See Lopez v. Robinson, 914 F.2d 486, 492 (4th Cir.1990). Plaintiff's claim of infrequent showers, without more, does not state a claim under the Eighth Amendment. See Davenport v. DeRobertis, 844 F.2d 1310, 1316 (7th Cir. 1988) (holding that one shower a week constitutionally sufficient), cert. denied, 488 U.S. 908 (1988); Veteto v. Miller, 829 F. Supp. 1486, 1496 (M.D. Pa. 1992) (holding that deprivation of showers during period of placement in administrative detention did not violate the Eighth Amendment); Devon v. Warden SCI-Mahanoy,  No. 08-1448, 2008 WL 3890161, 4 (M.D. Pa. Aug. 19, 2008) (holding that thirteen days without shower, shave or recreation did not violate the Eighth Amendment); Briggs v. Heidlebaugh,  No. 96-3884, 1997 WL 318081 *3 (E.D. Pa. May 22, 1997) (holding that suspension of shower privileges for two weeks did not violate the Eighth Amendment).

Plaintiff next claims that he was denied a meaningful opportunity to exercise for seven days. Although the Constitution does not require out-of-cell exercise, the near-total deprivation of the opportunity to exercise may violate the Eighth Amendment unless the restriction relates to a legitimate penological purpose. However, lack of exercise can only rise to this level "[w]here movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened...." French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, 479 U.S. 817, (1986).  Plaintiff presents no evidence of either condition.  Further, deprivation orders and restraining orders which limit a prisoner's recreation to one hour at a do not violate a prisoner's

Eighth Amendment rights when the denial of recreation is in response to disciplinary problems created by the plaintiff. <u>See</u> <u>Wilson v. Shannon</u>, 982 F. Supp. 337, 341 (E.D. Pa.1997) (granting summary judgment against plaintiff prisoner's Eighth Amendment claim based on a denial of exercise, holding there was no deliberate indifference where "[plaintiff] was denied exercise for only a brief period of time and denial of exercise was in response to disciplinary problems created by the plaintiff). Plaintiff's Eighth Amendment claim with regard to exercise therefore fails as a matter of law.

Finally, the record essentially is silent as to whether any of the Defendants knew about the allegedly cruel conditions of Plaintiff's housing, or if they did, when they were made aware of it and how long thereafter the conditions were permitted to exist. Plaintiff has failed to support a finding on the subjective prong of the Eighth Amendment with regard to his conditions of confinement claim. Consequently, given the dearth of evidence, Defendants are entitled to summary judgment as a matter of law with regard to Plaintiff's Eighth Amendment conditions of confinement claims.

### E. Failure to Supervise

Plaintiff's Complaint alleges claims against Defendants Romarowicz and Knizer for failing to supervise either their subordinates or inmate workers, resulting in the contamination of his meal. When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). At a minimum, such liability can be imposed only where there are both: "(1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending

subordinate." Id.  "Personal involvement must be alleged and is only present where the

supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in

them." Jetter v. Beard, 183 F. App'x. 178, 181 (3d Cir. 2006) (*quoting* Rode v. Dellarciprete,

845 F.2d at 1207 (3d Cir. 1988)).

Plaintiff has presented no evidence that any named Defendant had contemporaneous

knowledge that inmate Feola planned to or, in fact, did contaminate Plaintiff's food on the two

occasions alleged.  Further, Plaintiff has presented no evidence that any Defendant was aware of

the first instance of alleged contamination and failed to act so as to prevent the second alleged

incident.  Accordingly, Plaintiff has not presented evidence sufficient to sustain an Eighth

Amendment claim against Defendants for their alleged participation in the contamination of

Plaintiff's food.  Wesley v. Varand, 12-3010, 2012 WL 5936013 (3d Cir. Nov. 28, 2012) (failure

to point to any facts suggesting the Defendants were aware of and disregarded an excessive or

substantial risk of harm to him "does not rise to the standard required to sustain an Eighth

Amendment claim").

**F.  Conspiracy to Violate Plaintiff's Constitutional Rights**

Defendants also move for the entry of summary judgment as a matter of law with regard

to Plaintiff's claim that Defendants conspired with inmate Feola to contaminate his food.

Plaintiff has also alleged that all Defendants conspired to have him removed from the Kosher

Diet. Defendants correctly contend that there is no evidence tying Feola and his behavior to any

Defendant. Similarly, with regard to his claims regarding the Kosher Diet, Plaintiff has not

pointed to any facts that indicate the named Defendants were ever together, or were ever allied

against him in particular, and, indeed, he has failed to present even a plausible picture of a wide-

ranging conspiracy by the named Defendants to violate his civil rights.  Under these

circumstances, Plaintiff has not presented a genuine issue of fact precluding the entry of judgment in favor of Defendants as a matter of law.  Wesley v. Varand, 12-3010, 2012 WL 5936013 (3d Cir. Nov. 28, 2012).

### G. Fourth Amendment Claim.

Plaintiff's Complaint states in conclusory fashion that Defendants have violated his Fourth Amendment rights in the unconstitutional seizure of his property, including his "incoming mail packages photos and books ($70.00 value)."  [ECF No. 3, p. 4, ¶2].  There is no doubt that the protections of the Fourth Amendment with respect to seizures of a prisoner's effects or property do not apply in the prison context.  Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001). ("The Hudson court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration.").  See Hudson v. Palmer, 468 U.S. 517, 538 (1984) (O'Connor concurring) ("The fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects."). Defendants' Motion for Summary Judgment with regard to Plaintiff's Fourth Amendment claim therefore is granted.

## IV.    CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [ECF No. 25] as to all claims asserted by Plaintiff is granted. An appropriate Order follows.

### ORDER

AND NOW, this 20th day of December, 2012, it is hereby ORDERED that the Motion for Summary Judgment [ECF No. 25] filed by the Defendants is GRANTED.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within

thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk

of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY ORDER OF COURT,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record by Notice of Electronic Filing

        Joseph Laurensau
        DS-8331
        SCI Graterford
        P.O. Box 244
        Graterford, PA 19426